UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**4: CV22-1460**

CIVIL CASE NO: _____
(to be supplied by Clerk of the District Court)

_Glenn H. Stephens III_

(Enter above the full name of plaintiff in this action)

v.

_Melvin Cohrick et al.,_
_(see attached_

(Enter above the full name of the defendant(s) in this action)

FILED
WILLIAMSPORT
SEP 19 2022
PER _____ DEPUTY CLERK

## COMPLAINT *

1. The plaintiff _____ a citizen of the County of _____ State of Pennsylvania, residing at _____

wishes to file a complaint under _____
(give Title No. etc.)

_____

2. The defendant is _____

_____

. **xxl**
3. STATEMENT OF CLAIM: (State below the facts of your case. If you have paper exhibits that give further information of your case, attach them to this completed form. Use as much space as you need. Attach extra sheet(s) if necessary) _____

\* see attached
\*\* see attached

(See attached)

3. (CONTINUED) _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

4. WHEREFORE, plaintiff prays that _____

_____

_____

_____

_____

_____

_____

_____

_____
(Signature of Plaintiff)

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Glenn Stephens III, Ph.D., J.D.
Arbitrator Facilitator Mediator
150 Murray St. 75
Niwot CO 80544
720-295-9362
Pro Se Plaintiff

v.

Melvin R. Cohick,
Former Executor of the Estate of Weldon C. Cohick Jr.
173 Kendall Ave.
Jersey Shore PA 17740
570-398-1103
Defendant

Diane Hill Jones,
Executor of the Estate of Weldon C. Cohick Jr.
722 Prospect Ave.
Williamsport PA 17701
570-323-1312
Defendant

Leroy H. Keiler III, Esq.
Attorney for the Estate of Weldon C. Cohick Jr.
110 Oliver St. Ste. 2
Jersey Shore PA 17740
570-398-2750

Lori Cohick Barner,
Holding Herself Out as the Accountant the Estate of Weldon C. Cohick Jr.
173 Kendall Ave.
Jersey Shore PA 17740
570-220-1224 (cell)
570-398-4235 (land)
Defendant

Dale A. Tice, Esq.,
Attorney for Melvin R. Cohick
128 South Main St.
Jersey Shore PA 17740
570-398-1071
Defendant

Partners, Carpenter, Harris & Flayhart
The Employer of Dale A. Tice
128 South Main St.
Jersey Shore Pa 17740
570-398-5678
Defendant

## COMPLAINT

Executive Summary: Plaintiff, who has a settlement rate over 90% as an arbitrator, mediator and representative, offers to each Defendant the opportunity to settle this case involving an unlawful eviction in facial violation of the CDC moratorium for $2518.94. But if any Defendant refused yet another settlement offer and force's litigation, and thereby wasting the resources of this Court and taxpayers, the Plaintiff shall seek treble that amount in compensatory damages from that Defendant and applying the maximally allowed Constitutional ratio of compensatory damages to punitive damages either nine [9] times that compensatory damages amount (i.e., $7556.82 x 9 or $68011.38)(see *State Farm v. Campbell*, 538 US 408, 426 (2003)(capping that ratio at single digits albeit without establishing a bright line rule) or eleven [11] times compensatory damages (I.e., $7756.82 x 11 or $83,125.02)(see *The Bert Co. v. Matthew Turk*, 13 WAP 2022, 14 WAP 2022 (PA Supreme Court, 2021)(reviewing if an 11 to 1 ratio is Constitutional).

If litigation occurs only the Defendant forcing litigation stands to blame.

## Jurisdiction

Because Plaintiff, Glenn H.Stephens III, is a resident of Colorado and enjoys complete diversity with the all of the several Defendants, all of whom reside or Pennsylvania, this Court has diversity jurisdiction under the U.S. Constitution and 28 USC Sec. 1332.

## Facts

1. This case arises from "reprehensible" conduct, both tortious and criminal, see *BMW of N.A., Inc. v. Gore*, 517 U.S. 449, 574 (1996)(holding the degree of reprehensibility of defendants as one of three criteria determining the Constitutionality of the ratio of compensatory damages to punitive damages, animated by Melvin Dick Cohick ("Dick") based on his seething hatred of Plaintiff and his late mother, Margaret Cohick McDermit ("Maggie").

2. Dick hated his sister Maggie because she was and and Weldon's best friend and closest sibling.

3. In contrast, when Plaintiff asked Weldon in January 2021 about his relationship with Dick, Weldon replied "after Dick married Fleet, there was none." Dick married Fledabelle "Fleet" Dougherty in 1955.

4. Dick hates Plaintiff because he is Maggie's son.

5. Lori and Diane and Jiggs' other grandchildren (with the exception of the children of her son Maynard) resent the fact that Plaintiff, the only grandchild to live with Jiggs and Weldon, was Jiggs' favorite grandchild and Weldon's favorite among his nieces and nephews.

6. The animus and jealousy of Dick, Diane and Lori is relevant not just as background but also for purposes of establishing the ratio between compensatory and punitive damages.

7. Because the unlawful eviction of Plaintiff by Dick, Lori and Diane, tacitly or actively approved by the defendant lawyers and law firm, was driven by the reprehensible

motive of petty irrational resentment, the highest lawful such ratio should be applied to deter.

8. In contrast, Plaintiff has never had a cross word or disagreement with Lori or Diane. And while he opposes their criminal and tortious conduct, his opposition is not personal.

9. Similarly, Plaintiff bears Dick no ill will. Plaintiff lauded Dick when Plaintiff eulogized Dick's mother, Plaintiff's grandmother Wilma ("Jiggs") Cohick. Plaintiff purchased signed, had Weldon sign, and mailed condolence card to Dick and his two daughters soon after Fleet died. Plaintiff also sent a card to Dick on the anniversary of Fleet's death.

10. But Dick so despised Maggie and bears such animus toward Plaintiff as her son that Dick's only remark to Plaintiff at his mother's funeral, the funeral of his sister, was the reprehensible weight-shaming slur "You sure gained a lot of weight."

11. Although he found Dick's weight-shaming ironic (Dick is a morbidly obese diabetic kidney on dialysis; Plaintiff competed for Team USA in the International Triathlon Union (ITU) World Championship in London England a few months later) and inappropriate, he dismissed the slur and forgave.

12. Unlike Plaintiff, Dick refuses to forgive and forget.

13. Knowing Dick's hatred and inability to "get over it," Maggie predicted for decades, when Weldon died that Dick would abuse any role he had in Weldon's Estate, for example as Executor, or manipulate anyone who replaced him as Executor, to exact personal vengeance and to feed his hatred to her detriment and/or the detriment of her children (Plaintiff and his sister Leslie Royer Stevenson).

14. Dick proved Maggie right.

15. On or about November 19, 2020, after Weldon was serious injured in a fall, because every else refused, Plaintiff moved in with his uncle to care for him.

16. From then until late February 2021, when Weldon's condition worsened and required hospitalization and the hospice care, Plaintiff took care of Weldon's every need, except bathing, "24/7."

17. Aside from a month or so of help from Diane Hill Jones, no one else in the family helped him anyway.

18. Although for Weldon the love, care, and good humor shown him sufficed, Plaintiff offered to pay rent by paying online or by other means ½ of his uncle Weldon's fuel heating oil bill (roughly $500 a month, or $250 when divided by ½), his entire cable bill (roughly $150 a month) and ½ his electric bill (roughing $100 when divided by ½) for a monthly rent of $450 to $500 for a small room and twin bed.

19. Despite being unemployed like many others during the pandemic, Steven spent liberally on his uncle and a variety of other ways including regular trips to Brown's BBQ, knowing that Weldon likely didn't have much longer to live and feeling that Weldon should enjoy his final time on this planet.

20. In addition to paying rent, the then-COVID-unemployed Plaintiff estimates his total cash and kind spending on his uncle for those three months at well over $2000.

21. In contrast Dick, a multimillionaire, didn't spend a dime on Weldon during this time.

22. Nor did Dick give Weldon time or care or attention during those three months.

23. Dick was notably absent during that near-three-month period. He never visited.

24. Dick called Weldon once – but for selfish reasons to gain Weldon's sympathy after Fleet died.

25. So while Dick could not drive a few miles or pick up the phone to ask about Weldon's injuries or well being, when he saw an opportunity to exact revenge on Maggie and her son, the Plaintiff, he sprang into action.

26. Aided by Diane the Executor whom Weldon named to replace him, his daughter Lori (who falsely held herself out as the Estate's accountant), and with the express approval, according to Dick, of his lawyer Dale Tice, who was negligently supervised by his law firm Carpenter, Harris & Flayhart, and with the tacit or active approval of the Estate's attorney Leroy Keiler III (who knew or should have known that Dick was unlawfully evicting Plaintiff, acting ultra vires, despite Weldon removing him as Executor, Dick evicted Plaintiff from his Uncle Weldon's residence at 79 Lime Kiln Road, Linden PA, without the express consent or approval of the then-living and able Weldon C. Cohick.

27. At the time of the eviction, Diane was Executor.

28. After the death of Dick's wife, after a conversation with Diane and Plaintiff, Weldon removed Dick as Executor and replaced him with Diane.

29. At Weldon's request, Plaintiff typed the codicil making Diane his Executor.

30. Diane claimed Weldon signed and dated the codicil.

31. With the signatures and dating of the codicil, Dick ceased to be executor.

32. Thereafter, Dick acted ultra vires without power of law.

33. Tice suborns and Keiler negligently permits or assists Dick's ultra vires vendetta.

34. Dick's vindictive ultra vires eviction constitutes negligence per se because that conduct violates a public rule or regulations passed to prevent such conduct.

35. If Diane lied and the codicil was not executed pursuant to Weldon's wishes, and she never replaced Dick, her subterfuge would breach her fiduciary duty (she agreed verbally to serve as Executor and to replace Dick) and Dick's conduct would breach his fiduciary duty (if he continued to serve as Exector) or negligent per se (if replaced).

36. To establish whether his uncle Weldon authorized, directed or approved of the eviction, Plaintiff wrote his uncle ██████. Weldon did not indicate in the manner requested or any other manner that he approved the unlawful eviction.

37. Plaintiff completed and mailed the requisite CDC Protection Declaration, see Exs 1,2).

38. Plaintiff was current on rent when evicted.

## Damages

### 1. Out-of-pocket Money Damages

From each Defendant and the jointly and severally liable partners of the Carpenter firm, Plaintiff seeks damages consisting of his "cost of cover" (i.e., the difference between his housing costs for the 90-day period from the unlawful eviction date of March 10, 2021 to the date of the death of his uncle on June 7, 2021 and the rent he would have paid at but for the illegal eviction).

That "cost of cover" amounts to $2518.94 which is the difference between $4053.44 and $1534.50.

To save the courts resources and taxpayer money, and to put this very painful sequence of events behind him, the plaintiff who has offered to settle this case a dozen or more times to no avail, will settle this case for $2518.94 from each of the 8 Defendants (Dick, Diane, Lori, Keiler, Tice, and the Carpenter, Harris, and Flyhart partners, for total of $20,151.52.

But if Defendants require litigation and refuse to settle, Plaintiff will seek:

### Compensatory Damages

From any Defendant(s) who refuse to settle for the very reasonable amount of $2518.94, Plaintiff will seek treble compensatory damages - $7556.83 – for physical illness and/or emotional distress.

### Punitive Damages

At the time of this complaint, the issue of the Constitutionally allowed maximum ratio between punitive damages and compensatory damages is under review at the Supreme Court of Pennsylvania. If *State Farm* continues to set the ceiling then the punitive damage amount would be $68,011.38. If however the Pennsylvania Supreme Court rules that *The Bart Company* stands for the proposition that an 11 to 1 ratio of come punitive damages to compensatory damages is constitutional and therefore permissible in the commonwealth then the punitive damages for each defendant who refuses to settle it would be $83,125.02.

Because of the reprehensibility of the conduct here the maximum permissible ratio should be applied by the Court, particularly to any mendacious Defendant(s) who vexatiously refuse to settle for just over $2500 and thereby force needless litigation, wasting this Court's time and resources.

*[Signature]* 9/14/2022
Glenn H Stephens III



Jon Stephens
murray #75
Niwot CO 80544

Clerk US
Federal District Court
240 W 3rd St #218
Williamsport PA
17701

RECEIVED
WILLIAMSPORT

SEP 19 2022

PER _____ DEPUTY CLERK